UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ASHER B. HILL, | ) |
|             Plaintiff, | ) |
| vs. | ) Case No. 1:13-cv-68-RLY-MJD |
| JERRY SNYDER, et al., | ) |
|             Defendants. | ) |

**Entry Discussing Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

**I. Background**

Plaintiff Asher Hill ("Mr. Hill") is an Indiana prisoner confined at the Wabash Valley Correctional Facility ("Wabash Valley"). This civil rights complaint is brought pursuant to 42 U.S.C. § 1983. In his amended complaint, Mr. Hill alleges that Unit Team Manager Jerry Snyder and Correctional Lt. Brian Butler failed to protect him from offender Martin who allegedly threw feces on Mr. Hill on several different occasions. He seeks compensatory and punitive damages and injunctive and declaratory relief.

The defendants have filed a motion for summary judgment seeking resolution of the claims against them based on the affirmative defense that Mr. Hill failed to exhaust his available administrative remedies prior to filing the amended complaint. Mr. Hill has opposed the motion for summary judgment and the defendants have replied.

For the reasons explained in this Entry, the defendants' motion for summary judgment [dkt. 39] must be **granted.**

## II. Discussion

### A. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the

time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

    B.    *Undisputed Facts*

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(c), the following facts, construed in the manner most favorable to Mr. Hill as the non-movant, are undisputed for purposes of the motion for summary judgment:

Mr. Hill has been incarcerated at Wabash Valley since February 20, 2009. He is assigned to B-East of the Secure Confinement Unit. The cell doors in that unit are solid with automatic locks attached to the handcuff ports (food slots) and only prison staff can open them with a key. Mr. Hill alleges that prison officers failed to secure his handcuff port, allowing other inmates to throw feces into his cell. Mr. Hill alleges that defendants Snyder and Butler failed to protect him from another inmate throwing feces at him on February 24, 2011, May 3, 2011, June 24, 2012, June 25, 2012, and August 30, 2012.

Indiana Department of Correction ("IDOC") Policy and Administrative Procedure 00-02-301, "Offender Grievance Process," is the IDOC policy governing how an offender can exhaust his administrative remedies. Offenders can grieve matters that involve actions of individual staff under the grievance program at Wabash Valley, including those actions alleged in Mr. Hill's amended complaint.

The grievance process at Wabash Valley includes an attempt to resolve the complaint informally, as well as two formal steps: a formal written grievance and then an appeal of the response to the written grievance. Offenders shall contact an appropriate staff member within five

(5) working days of the complained of incident to attempt to resolve his complaint informally. If an offender is unable to resolve his complaint or concern informally, the offender is permitted to file a formal grievance. An offender wishing to file a formal grievance must submit a completed grievance form no later than 20 working days from the date of the incident giving rise to the complaint. If within seven (7) working days after submitting a grievance, the offender does not receive either a receipt indicating that the grievance was received, or a form explaining that his grievance was rejected, the offender is required to immediately notify the counselor/case manager and executive assistant. If the grievance is not resolved in a manner that satisfies the offender, or if he did not receive a response within twenty-five (25) working days of submitting a grievance, the offender may pursue the issue by filing an appeal to IDOC's Grievance Manager. Exhaustion of the grievance procedure requires pursuing an appeal to the final step of the grievance process. Grievance forms are available in each housing unit and in the law library. *See* Offender Grievance Process, Dkt 39-2, p. 17. Mr. Hill has filed a number of grievances with respect to other issues not relevant to this action.

With respect to the February 24, 2011, incident, Mr. Hill submitted a grievance form dated February 24, 2011, regarding an inmate assaulting him with feces. Dkt. 44, p. 4, ¶ 7. That grievance was returned on March 8, 2011, with a notation that "[a]n attempt at informal resolution, or verification of such, is requested at this time." Dkt. 44, p. 22 (Ex. F). The form was signed by Executive Assistant T. Littlejohn.

Mr. Hill attempted to informally resolve the issue by sending a letter on March 3, 2011, to Mr. Snyder informing him that his subordinate officers had failed to follow proper procedures after another inmate had thrown feces at Mr. Hill while he was in the shower. At the bottom of the letter,

it was written "Lt. Butler is looking into this. I am confident he will handle appropriately." Dkt. 44, p. 12 (Ex. A). The signature appears to be that of J. Snyder with someone else's initials. *Id.*

Mr. Hill re-submitted the grievance. The date on the response to the grievance was March 29, 2011. Dkt. 44, p. 16 (Ex. C.). The Return Form dated March 29, 2011, stated at the top: "The attached grievance is being returned to you because you have failed to comply with the administrative procedures for policy 00-02-301, 'Offender Grievance Process.' This grievance is being returned for the following reasons:" At the bottom of the form, it stated "Lt. Butler has viewed the video and is not able to verify this occurred." *Id.* No further action was taken on this grievance.

The next incident allegedly occurred on May 3, 2011, when Mr. Hill was being escorted to the shower. He alleges that another offender stuck a bottle out of his cuffport and squirted feces at Mr. Hill. Mr. Hill attempted to informally resolve his complaint by writing a letter dated May 3, 2011, to Mr. Snyder. Dkt. 44, p. 18 (Ex. D). A notation on the bottom of the letter indicates that J. Snyder forwarded it to Lt. Butler. *Id.* Mr. Hill states in his declaration that he submitted a formal grievance on May 8, 2011, a copy of which he has submitted as Exhibit E. Dkt. 44, p. 6, ¶ 11; Dkt. 44, p. 20 (Ex. E). The defendants have no record of a grievance dated May 8, 2011, and the copy tendered by Mr. Hill has no signature of or number assigned by a Department of Correction employee. Mr. Hill states under penalty of perjury that he received a return form in response to the grievance, dkt. 44, p.7, ¶ 12, but the exhibit he refers to, Exhibit F, is dated February 24, 2011, and it requests that he attempt to informally resolve the complaint first. Dkt. 44, p. 22 (Ex. F). It is not conceivable that Exhibit F (dated February 24, 2011) is a response to the May 8, 2011, grievance. Rather, as discussed above, Exhibit F appears to be the first return form associated with Mr. Hill's

February 25, 2011, grievance. There is no other evidence of any further action taken with respect to the grievance concerning the May 3, 2011, incident.

Mr. Hill alleges that more than a year later, June 24 and June 25, 2012, another offender threw feces into his cell. Mr. Hill states under penalty of perjury in his declaration that he attempted to informally resolve his complaint by writing a letter to defendant Snyder on June 25, 2012, informing Mr. Snyder of the incidents and requesting a grievance form. Dkt. 44, pp. 7-8, ¶¶ 13-14. Mr. Hill asserts that Mr. Snyder signed the bottom of the letter and dated his response. *Id.* Mr. Hill states that he has submitted a copy of that letter as Exhibit G, but Exhibit G was not submitted in response to the motion for summary judgment. *Id.* Giving Mr. Hill every benefit of the doubt, the Court notes that on January 24, 2013, he submitted 17 exhibits with his proposed amended complaint, including Exhibit G. Dkt. 7-8. Nonetheless, Exhibit G is a Request for Interview dated June 25, 2012, addressed to Ms. Gilmore, and the response to it asking how feces could be thrown in a cell is not signed. Dkt. 7-8.

In his amended complaint affirmed under penalty of perjury, Mr. Hill asserts that on June 26, 2012, he reported the June 24 and 25 incidents in writing to defendants Snyder, Gilmore, and Nicholson. Dkt. 11, p. 12. He alleges that defendants Snyder and Nicholson did not respond, but defendant Gilmore responded by asking "How can he throw feces in your cell? You have a solid door." *Id.*; Dkt. 7-8 (Ex. G - unsigned). Mr. Hill further states in his amended complaint and his sworn declaration that on July 9, 2012, he requested a grievance form, but Counselor Dugan first told him that defendant Snyder told him to review Gilmore's response to the complaint before he issued a grievance form, and after Counselor Dugan reviewed that response, he told Mr. Hill that defendant Snyder told him not to issue a grievance form to Mr. Hill. Dkt. 11, p. 13; Dkt. 44, p. 8, ¶ 14.

The final incident at issue occurred on August 30, 2012. Mr. Hill alleges in his amended complaint that another offender threw feces on him on that date while Mr. Hill was asleep in his cell. Dkt. 11, pp. 13-14. He states in his amended complaint and in his declaration that he attempted to file a grievance regarding this incident but was prevented from doing so because he could not provide Mr. Snyder with the exact time of the August 30, 2012, incident. Dkt. 11, p.14; Dkt. 44, p. 9. ¶ 15. Exhibit I is a copy of a September 5, 2012, letter that Mr. Hill states that he sent to Counselor Dugan. Dkt. 7-10. In addition to informing Counselor Dugan that Mr. Hill did not know the exact time that the feces was thrown on him, the letter requests that Counselor Dugan send him a grievance form. *Id.*

    C.    *Analysis*

The defendants argue that Mr. Hill did not complete all of the steps of the exhaustion process with respect to any of his claims against them. The record supports their position, however, Mr. Hill contends that the defendants prevented him from exhausting his remedies. In essence, Mr. Hill argues that the administrative process was not available to him.

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* The Court shall review the evidence to determine whether Mr. Hill has presented evidence sufficient to create a genuine issue of fact with respect to whether affirmative misconduct prevented him from exhausting his administrative remedies.

With respect to the February 24, 2011, incident, it is undisputed that Mr. Hill attempted to informally resolve his complaint, but after his written formal grievance was returned to him a

second time, he did not either resubmit it or file an appeal. An offender is to submit a completed grievance form no later than 20 days from the date of the incident giving rise to the complaint. *See* Offender Grievance Process, dkt. 39-2, p. 16. That time frame is extended if the form is returned to the offender, which is what happened here. Mr. Hill, however, has presented no evidence showing that he completed the administrative process after his written grievance was returned to him. In addition, there is no evidence that any prison staff prevented Mr. Hill from proceeding with the administrative process with respect to this claim. The defendants are entitled to summary judgment with respect to the February 24, 2011, claim.

With respect to the alleged May 3, 2011, incident, assuming that Mr. Hill submitted a written grievance on May 8, 2011, there is no evidence that he completed the grievance process with respect to that claim. He alleges that his grievance was returned to him, but he presents no evidence showing what steps he took thereafter. According to the Offender Grievance Process, the Executive Assistant has 15 working days from the date a grievance is received in which to complete an investigation and respond to the offender. Dkt. 39-2, p. 21. Even if Mt. Hill had re-submitted the grievance and received no response within 25 working days of the day he submitted it, he should have appealed as though the grievance had been denied. *Id.* at p. 24. Mr. Hill did not appeal his grievance to the final step of the process. Mr. Hill's own description of what occurred when he filed his grievance and what response he received fails to raise a genuine issue of material fact. Moreover, there is no evidence that he was prevented from completing all of the steps of the administrative process. The defendants are entitled to summary judgment with respect to the May 3, 2011, claim.

Regarding the June 24 and June 25 incidents, Mr. Hill has presented evidence showing that he informally attempted to resolve his complaint by sending a letter dated June 25, 2012, to several

prison staff, to which Gilmore responded by asking how feces could be thrown into his cell. This evidence is sufficient to show that he attempted to informally resolve his complaint. He further states that on or about July 19, 2012, defendant Snyder told Counselor Dugan not to give him a grievance form. The defendants respond that Mr. Hill could have obtained a grievance form from other sources, including the law library. *See* Offender Grievance Process, dkt. 39-2, p. 17 (grievance forms are available in housing units, the law library, and from the Executive Assistant).

Accepting as true Mr. Hill's contention that his counselor refused to give him a grievance form, Mr. Hill has not shown that his other options to obtain the proper form were thwarted. It is true that "[i]f prison employees refuse to provide inmates with those [grievance] forms when requested, it is difficult to understand how the inmate has any available remedies." *Dale,* 376 F.3d at 656. In *Dale,* however, the plaintiff created a genuine issue of fact when he showed that he had requested forms from his counselor, his case manager, the on-duty floor officer, and members of his unit team, but none of them provided them to him. *Id.* at 655-56. Mr. Hill has not demonstrated similar efforts. Of some note is the fact that Mr. Hill was able to file formal grievances regarding other issues on June 12, June 18, September 5, September 6, and September 13, 2012. Under these circumstances, Mr. Hill has not presented sufficient evidence to create a genuine fact issue as to whether he was prevented from exhausting his available remedies. The defendants are entitled to summary judgment as to the June 2012 claims.

Mr. Hill also argues that he was prevented from exhausting his remedies with respect to the August 30, 2012, incident. Mr. Hill states that he informally reported his claim that on August 30, 2012, an inmate threw feces on him in his cell while he was asleep. He was told to tell staff what time the incident occurred. He replied in writing that he did not know the exact time and requested a grievance form from Counselor Dugan. Although he attempted to informally resolve

his complaint, he does not allege what transpired after he requested the form. Even assuming that Counselor Dugan did not respond to his request, Mr. Hill alleges no refusal to provide a grievance form and he does not assert that he took any other steps toward obtaining the form and completing the grievance process. Mr. Hill alleges no reason why he could not obtain a form from other sources. *See* Offender Grievance Process, Dkt. 39-2, p. 17. Mr. Hill was not prevented from completing the exhaustion process.

In conclusion, Mr. Hill did not complete his available exhaustion process with respect to any of the incidents alleged. Therefore, in light of 42 U.S.C. § 1997e(a), the claims against the defendants should not have been brought and must now be dismissed without prejudice. *See Ford*, 362 F.3d at 401 ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice.").

### III. Conclusion

For the reasons set forth above, the defendants' motion for summary judgment [dkt. 39] is **granted.** Final judgment consistent with this Entry and with the Entry of August 13, 2014, shall now issue.

**IT IS SO ORDERED.**

Date: __6/29/2015__

RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Asher B. Hill
922526
Wabash Valley Correctional Facility
Inmate Mail/Parcels
6908 S. Old US Hwy 41
Carlisle, IN 47838

Electronically Registered Counsel